UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| OLIVINE INTERNATIONAL MARKETING, LTD,<br><br>　　　　Plaintiff,<br><br>v.<br><br>TEXAS PACKAGING COMPANY, INC., *et al*.,<br><br>　　　　Defendants. | Case No. 2:09-CV-02118-KJD-PAL<br><br>**ORDER** |

　　　　Presently before the Court is Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (#8). Plaintiff filed a response in opposition (#16) to which Defendants replied (#18).

I.  Jurisdictional Facts and Background

　　　　Plaintiff is a Hong Kong limited company with its principal office in Hong Kong. Plaintiff's principal employee, Marshall Daniel ("Daniel"), lives in and conducts business from Henderson, Nevada. Defendants are a Texas corporation, doing business in Mineral Wells, Texas and the corporation's principal shareholders and officers also reside in Mineral Wells, Texas.

　　　　The dispute in this action arises from a contract formed when Defendant Texas Packaging Company, Inc. faxed a purchase order to Daniel in Nevada for packaging and boxes to contain candy sold by Defendants' third party customer DeMets. Defendants agreed to pay $598,783.00 for the

packaging and paid $300,000.00 as a deposit on the order. Though the packaging was manufactured and delivered, DeMets raised concerns about the packaging with Defendants, refusing part of the shipment. Defendants entered into litigation with DeMets in Canada, and did not pay Plaintiff the money remaining due under the contract. Eventually, the Canadian action was settled, though Defendants did not disclose this to Plaintiff. Instead, according to the allegations of the complaint, Defendants continued to inform Plaintiff that the litigation was continuing and used the proceeds of the settlement to pay another debt.

Eventually, Defendants admitted to Plaintiff that they had used the money for other purposes. Defendants paid $50,000.00 to Plaintiff as the initial installment of a self-imposed payment plan. However, Defendants failed to make any other payments and Plaintiff initiated this action on November 12, 2009. Plaintiff asserts claims for breach of contract, fraud, conversion, embezzlement, unjust enrichment and breach of the duty of good faith and fair dealing. Defendants then filed the present motion to dismiss for lack of personal jurisdiction, improper venue and seeking to dismiss the tort claims.

II. Standard for Motion to Dismiss for Lack of Personal Jurisdiction

Since no applicable federal statute governing jurisdiction in this case exists, the court applies the law of the state in which the district court exists. See Gator.com Corp. v. L.L. Bean, Inc., 341 F.3d 1072, 1076 (9th Cir. 2003). Nevada permits the exercise of personal jurisdiction to the full extent permitted by due process. See Wells Fargo & Co. v. Wells Fargo Express Co., 556 F.2d 406, 415 (9th Cir. 1977).

Where defendants move to dismiss a complaint for lack of personal jurisdiction, plaintiffs bear the burden of demonstrating that jurisdiction is appropriate. See Dole Food Co., Inc. v. Watts 303 F.3d 1104, 1108 (9th Cir. 2002). Where, as here, the motion is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts." Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990). In such cases, "[the court] only

inquire[s] into whether [the plaintiff]'s pleadings and affidavits make a prima facie showing of personal jurisdiction." Caruth v. Int'l Psychoanalytical Ass'n, 59 F.3d 126, 128 (9th Cir. 1995).

The assertion of personal jurisdiction satisfies due process when there are "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). These requirements "give a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

Personal jurisdiction may be either general or specific. See Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1990). General jurisdiction exists when there are "substantial" or "continuous and systematic" contacts with the forum state, even if the cause of action is unrelated to those contacts. Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1086 (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415 (1984)). Specific jurisdiction may be asserted "if the case arises out of certain forum-related acts." Id. "Whether dealing with specific or general jurisdiction, the touchstone remains 'purposeful availment' ... [to] ensure[ ] that 'a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts.' " Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co., 284 F.3d 1114, 1123 (9th Cir. 2002) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)). In this action Plaintiff asserts both general and specific jurisdiction over Defendants.

III.  Analysis

    A.  General Jurisdiction

In evaluating general jurisdiction, the court must consider, among other factors, "whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." See Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1172 (9th Cir. 2006)(quoting Bancroft & Masters, 223

F.3d at 1086). Determining whether a corporate defendant's contacts in a particular case are substantial and continuous turns on the "economic reality of the defendants' activities rather than a mechanical checklist." Gates Learjet Corp. v. Jensen, 743 F.2d 1325, 1331 (9th Cir. 1984). See, e.g., Glencore, 284 F.3d at 1124-25 (holding that no general jurisdiction exists where a defendant's only contacts with California amounted to sixteen shipments of rice sold through an independently employed sales agent); Congoleum Corp. v. DLW Aktiengelsellschaft, 729 F.2d 1240, 1242 (9th Cir. 1984) (noting that "no court has ever held that the maintenance of even a substantial sales force within the state is a sufficient contact to assert jurisdiction in an unrelated cause of action").

Here, Plaintiff alleges that the following facts establish the existence of general jurisdiction: 1) Defendants placed an order with Plaintiff's principal employee in Nevada; 2) Defendants were required to make payment under the contract in Nevada; and 3) Defendants carried on negotiations with Plaintiff and Plaintiff's agents in Nevada regarding the balance due under the contract. In asserting that general jurisdiction is appropriate, Daniel has also averred, "I have been doing business with Defendants from my home office in Nevada for at least five (5) years." However, these isolated acts fail to meet Plaintiff's burden. Though doing business for five years might demonstrate continuous contacts or longevity in the forum, Daniel's statement says nothing about the substantive nature of the contacts, or the "economic reality of the defendants' activities." Gates Learjet, 743 F.2d at 1331. Instead, Plaintiff's allegations merely demonstrate that Nevada was an occasional conduit for purchase orders from Texas to Hong Kong. Clearly, Plaintiff has failed to make a *prima facie* showing of general jurisdiction.

B. Specific Jurisdiction

A district court uses a three-part test to determine whether it may exercise specific jurisdiction over a nonresident defendant: (1) The nonresident defendant must do some act or consummate some transaction with the forum, or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking its benefits and protections; (2) the claim must be one which arises out of or results from the defendant's forum-

related activities; and (3) the exercise of jurisdiction must be reasonable. See <u>Cybersell, Inc. v. Cybersell, Inc.</u>, 130 F.3d 414, 416 (9th Cir. 1997). Here, because the Court finds that Plaintiff has failed to establish that Defendants acted or consummated some transaction within the forum or performed acts by which they purposefully availed themselves of the privilege of conducting activities in the forum thereby invoking Nevada's benefits and protections, it is unnecessary for the Court to discuss the second and third prongs of the test.

A defendant has purposely availed himself of the benefits of a forum if he has deliberately "engaged in significant activities within a State or has created 'continuing obligations' between himself and the residents of the forum." <u>Gray & Co. v. Firstenberg Mach. Co.</u>, 913 F.2d 758, 760 (quoting <u>Burger King</u>, 471 U.S. at 475-76). Purposeful availment thus requires that the defendant affirmatively act to allow or promote business transactions within the forum state. <u>Decker Coal Co. v. Commonwealth Edison Co.</u>, 805 F.2d 834, 840 (9th Cir. 1986).

The Ninth Circuit has distinguished tort and contract cases when applying the purposeful availment prong of the specific jurisdiction test. See <u>Roth v. Garcia Marquez</u>, 942 F.2d 617, 620-21 (9th Cir. 1991). The mere existence of a contract with a resident of the forum state will be insufficient to satisfy the purposeful availment requirement. <u>Id.</u> at 621. Something more is required and the Supreme Court has indicated that courts should look for "continuing relationships and obligations with citizens of [the forum state]." <u>Id.</u> (citing <u>Burger King</u>, 471 U.S. at 473). Other factors the court should look for are "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." <u>Id.</u> at 479.

Plaintiff asserts that the following factors demonstrate that Defendants purposefully availed themselves of the privileges of conducting activities within the forum: 1) Defendants agreed to make payment in Nevada; 2) Defendants sent purchase orders to Nevada; and 3) Defendants promised to use the settlement from the Canadian litigation to pay the balance due on the contract.

However, the weight of the facts and case law do not support Plaintiff's position. "A 'contract' is 'ordinarily but an intermediate step serving to tie up prior business negotiations with

future consequences which themselves are the real object of the business transaction.'" Stuart v. Spademan, 772 F.2d 1185, 1193 (5th Cir. 1985)(quoting Burger King, 471 U.S. at 473).  Here, the contract was for a finite transaction, the manufacturing and shipping of boxes from China to Canada, unlike the contract in Burger King which contemplated "a carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts with Burger King in Florida." Burger King, 471 U.S. at 473; see also, Spademan, 772 F.2d at 1194.

Additionally, the sending of purchase orders to the forum state has failed to establish a defendant's purposeful availment in other cases.  See Hydrokinetics, Inc. v. Alaska Mech. Inc., 700 F.2d 1026, 1028 (5th Cir. 1983), *cert. denied*, 466 U.S. 962 (1984); Spademan, 772 F.2d at 1193. Furthermore, the agreement and practice of mailing or making payment in the forum state does not weigh heavily "in the calculus of contacts." Id. at 1194 (citing Patterson v. Dietze, Inc., 764 F.2d 1145, 1147 (5th Cir. 1984)); Hydrokinetics, 700 F.2d at 1029.

Furthermore, Plaintiff relies on the individual defendants' alleged tortious conduct to turn a breach of contract action into a tort action with wrongful conduct directed toward the forum. However, the allegations of the complaint are bare of actual factual detail.  The tort claims merely restate the bare elements of proof for each cause of action without specifying, for example, how Plaintiff relied on Defendants' statements and how it was damaged by the reliance. Though the Court declines to dismiss these causes of action because it is without jurisdiction over Defendants, it notes that the allegations are too scant to show that tortious conduct occurred in the forum or was directed towards it.  In fact, Plaintiff's allegations demonstrate that other than the purchase order, almost all alleged conduct was directed by Plaintiff, or Plaintiff's agents, at Defendants.  See Burger King, 471 U.S. at 474 (unilateral activity of the Plaintiff in the forum state does not suffice as purposeful availment).

Therefore, weighing all of the factors, Plaintiff has failed to make a prima facie showing that Defendants have purposefully availed themselves of the privilege of conducting business in Nevada. The contract at issue in this action does not envisage continuing and wide-reaching contacts between

Defendants in Texas and Plaintiff in Nevada. Defendants' contacts with the forum are too limited and attenuated to satisfy the minimum contacts requirement under the Due Process clause. Because Plaintiff fails to demonstrate that Defendants purposefully availed themselves of the privilege of doing business in Nevada, the Court need not address whether the claim arose from forum related activities or whether the exercise of jurisdiction would be reasonable. See McGlinchy v. Shell Chem. Co., 845 F.2d 802, 817-18 (9th Cir. 1988).

IV.  Conclusion

Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (#8) is **GRANTED**.

DATED this 27th day of September 2010.

_____
Kent J. Dawson
United States District Judge